# STATE OF MICHIGAN

# COURT OF APPEALS

---

*In re* Estate of IRENE GORNEY.

---

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Plaintiff-Appellant,

v

ESTATE OF IRENE GORNEY,

        Defendant-Appellee.

FOR PUBLICATION
February 4, 2016

No.   323090
Huron Probate Court
LC No.   13-039597-CZ

---

*In re* Estate of WILLIAM B. FRENCH.

---

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Plaintiff-Appellant,

v

DANIEL GENE FRENCH, Personal
Representative for the Estate of WILLIAM B.
FRENCH,

        Defendant-Appellee.

No.   323185
Calhoun Probate Court
LC No.   2013-000992-CZ

---

*In re* Estate of WILMA KETCHUM.

---

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

        Plaintiff-Appellant,

-1-

v                                                          No.  323304
                                                           Clinton Probate Court
ESTATE OF WILMA KETCHUM,                                    LC No.  14-028416-CZ

            Defendant-Appellee.

_____

*In re* Estate of OLIVE RASMER.

_____

DEPARTMENT OF HEALTH AND HUMAN
SERVICES,

            Plaintiff-Appellant,

v                                                          No.  326642
                                                           Bay Probate Court
RICHARD RASMER, Personal Representative of                  LC No.  14-049740-CZ
the Estate of OLIVE RASMER,

            Defendant-Appellee.

_____

Before:  JANSEN, P.J., and CAVANAGH and GLEICHER, JJ.

JANSEN, J. (*concurring in part and dissenting in part*).

    I concur with the majority's determinations that the notice provided in the redetermination application was statutorily sufficient, the lack of notice at the time of enrollment did not violate due process, and the estates did not have a due-process right to the continuation of a favorable Medicaid law.  However, I respectfully dissent from the majority's determinations that the Department of Health and Human Services (DHHS) violated the due-process rights of the decedents by seeking to recover benefits expended between July 1, 2010 and July 1, 2011, and that the Ketchum Estate may raise the issue whether the DHHS abused its discretion in seeking recovery in the trial court on remand.

    With regard to the majority's conclusion that the DHHS violated the decedents' due-process rights by seeking to recover benefits expended between July 1, 2010 and July 1, 2011, I conclude that this Court's decision in *In re Keyes Estate*, 310 Mich App 266; 871 NW2d 388 (2015) controls the outcome in this case.  In *Keyes*, this Court concluded there was no due-process violation in spite of the fact that the decedent did not receive notice of the estate recovery program when she enrolled in Medicaid.  *Id*. at 275.  The decedent began receiving Medicaid benefits in April 2010.  *Id*. at 268.  However, the decedent was not notified about the possibility of estate recovery when she enrolled in Medicaid.  *Id*. at 269.  Instead, the decedent's son signed a Medicaid application form in May 2012, which acknowledged that the estate was subject to estate recovery for services paid by Medicaid.  *Id*.  The trial court determined that the estate recovery program violated the decedent's right to due process since she did not receive

-2-

notice of the estate recovery program when she enrolled in Medicaid. *Id*. at 275. However, this Court reasoned that the estate recovery program did not violate the estate's right to due process since MCL 400.112g did not require notice at the time of enrollment. *Id*. This Court emphasized that the estate received notice and a hearing when it was informed of the estate recovery program and had the opportunity to contest the issue in the probate court. *Id*. Thus, this Court determined that there was no due-process violation in spite of the fact that the decedent began receiving Medicaid benefits in April 2010. See *id*.

Although the issues surrounding the retroactive application of the estate recovery program were not directly raised in *Keyes,* the decision nevertheless dictates the outcome in this case. In *Keyes*, this Court stated that the decedent began receiving Medicaid benefits in April 2010, and it can be inferred that the Michigan Department of Community Health (now the DHHS) sought to recover an amount covering the period during which the decedent began receiving Medicaid benefits. *Keyes*, 310 Mich App at 268. Here, the DHHS sought to recover for Medicaid benefits paid on behalf of the decedents since July 1, 2010. Thus, this case is similar to *Keyes* since this Court in *Keyes* held that the estate recovery program did not violate due process in spite of the fact that the decedent began receiving Medicaid benefits in April 2010. See *id*. at 275. Therefore, I conclude that *Keyes* dictates the outcome that the estate recovery program did not violate the decedents' right to due process. See *id*.

Furthermore, even if *Keyes* did not control the outcome in this case, I do not believe that the retroactive application of the estate recovery program violated the decedents' right to due process. The majority concludes that the Legislature deprived the decedents of their right to dispose of their property by affecting how the decedents chose to manage their property. "The Fourteenth Amendment to the United States Constitution and Article 1, § 17 of Michigan's 1963 Constitution provide that the state shall not deprive a person of life, liberty, or property without due process of law." *Keyes*, 310 Mich App at 274. An individual has a vested interest in the use and possession of real estate. *Bonner v City of Brighton*, 495 Mich 209, 226; 848 NW2d 380 (2014). Additionally, a property owner also has a legal right to dispose of his or her property. *Loretto v Teleprompter Manhattan CATV Corp*, 458 US 419, 435; 102 S Ct 3164; 73 L Ed 2d 868 (1982). As explained in *Bd of Regents of State Colleges v Roth*, 408 US 564, 577; 92 S Ct 2701; 33 L Ed 2d 548 (1972):

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

I do not believe that the interest articulated by the majority constitutes a protected property interest. The decedents were not deprived of the use and possession of their property during their lives. See *Bonner*, 495 Mich at 226. In addition, the decedents were not deprived of the right to dispose of their property through transfer or sale since the decedents were not prevented from selling or transferring their property while they were alive. See *Loretto*, 458 US at 435. At most, the interest at stake can be characterized as the right to choose how to manage property or the right to make alternative healthcare arrangements instead of encumbering an estate. See *id*. I conclude that there is no existing rule or common understanding establishing

-3-

the right to make alternative healthcare arrangements or the right to choose how to manage property. See *Roth*, 408 US at 577. Furthermore, even assuming that there is a due-process right that was violated when the DHHS applied the estate recovery program retroactively, the right is personal to the decedents, and it is impossible for the estates to know what alternative arrangements the decedents would have made. See *id*. Therefore, I conclude that the decedents were not deprived of a property interest. See *Keyes*, 310 Mich App at 274.

I also do not believe that the estates have standing to challenge whether the estate recovery program violated the decedents' due-process rights. MCL 700.3703(3) provides, "*Except as to a proceeding that does not survive the decedent's death*, a personal representative of a decedent domiciled in this state at death has the same standing to sue and be sued in the courts of this state and the courts of another jurisdiction as the decedent had immediately prior to death." (Emphasis added.) In this case, the property interest described in the majority opinion was personal to the decedents since it involved the decedents' ability to make decisions regarding the management of their property. Thus, the property interest was not transferable to the estates, and the proceedings did not survive the death of the decedents. See *id*.

Finally, I disagree with the majority's conclusion that the Ketchum Estate may challenge on remand whether the DHHS abused its discretion in seeking estate recovery in violation of MCL 400.112g(4). MCL 400.112g(4) provides, "The department of community health shall not seek medicaid estate recovery if the costs of recovery exceed the amount of recovery available or if the recovery is not in the best economic interest of the state." As noted by the majority, "[r]ecovery will only be pursued if it is *cost-effective* to do so as determined by the department *at its sole discretion*." See *Bridges Administrative Manual*, BAM 120, p 7 (emphases added). Thus, the DHHS has the *sole discretion* to determine whether estate recovery is cost-effective pursuant to MCL 400.112g(4). See *id*. Therefore, I do not believe that the DHHS's decision regarding the costs of estate recovery is reviewable by the trial court. See *id*. Accordingly, I respectfully disagree with the majority that the Ketchum Estate may raise the issue in the trial court on remand.

For the reasons discussed above, I conclude that the trial courts erred in denying the DHHS's collection attempts. I would reverse and remand for entry of judgment in favor of the DHHS.

/s/ Kathleen Jansen